HEANEY, Circuit Judge.
Briggs Transportation Company appeals from the district court’s, 40 B.R. 972[1], denial of a preliminary injunction against the present and future peaceful picketing activities of its employees under the direction of the defendants,' various unions representing approximately 300 of Briggs’ 400 employees. Briggs asserts that the court was not barred from enjoining such employee and union activities under the restrictions of the Norris-LaGuardia Act, 29 U.S.C. §§ 101-115 (1982), because the company had previously filed bankruptcy under Chapter 11 of the Bankruptcy .Code and received an order from the bankruptcy court allowing it to abrogate its collective bargaining contracts with the unions as part of its reorganization efforts. We cannot agree that the abrogation of existing collective bargaining agreements pursuant to a court order in Chapter 11 proceedings, recently upheld in principle by the Supreme Court in NLRB v. Bildisco & Bildisco, — U.S.-,---, 104 S.Ct. 1188, 1194-1197, 79 L.Ed.2d 482, 492-496 (1984), automatically lifts the jurisdictional restrictions placed on federal courts in cases of labor disputes by the Norris-LaGuardia Act. We therefore affirm the judgment of the district court.
Briggs is a motor carrier located in the upper midwest. In 1978, it employed over 2,000 people. Since that time, it has failed to turn an annual profit and has consistently laid off many of its workers. On January 25, 1983, the company filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. At that time, it employed approximately 1,100 people. After filing its bankruptcy petition, Briggs closed thirty-five of its fifty-seven terminals and laid off around 800. more employees. It now employs nearly 400 persons, 300 of which are represented by the unions which are defendants in the present action.
Briggs met several times with union representatives in attempts to reduce its obligations under various collective bargaining agreements with the defendants. Briggs proposed a general wage rate of $9.00 an hour, instead of the $13.21 rate it had agreed to in existing labor agreements, along with significant cuts in fringe benefits and changes in important terms of employment. The record reveals a Briggs estimate that the proposed economic package reflected a thirty-two percent cut in pay alone. Failing to arrive at an agreeable reduction in contract benefits with the unions, Briggs moved the bankruptcy court for authority to abrogate its collective bargaining contracts under 11 U.S.C. § 365(a) (1982) in late August of 1983. The bankruptcy court, 39 B.R. 343, granted this motion on March 30, 1984.
The company immediately announced a unilateral reduction in wages, benefits, and terms of employment consistent with the aforementioned proposal, effective April 1, 1984. Employee members of the International Brotherhood of Teamsters, one of the defendant unions, began a strike on April 5 and 6, 1984, with pickets stationed at many Briggs terminals. Briggs agreed to postpone the effective date of the proposed changes, and the Teamsters ended the strike. The parties conducted further meetings, but failed to arrive at a negotiated solution.
On April 20, 1984, Briggs filed the present action in the United States District Court for the District of Minnesota. The company sought an injunction against un-‘ ion activities which it viewed as interfering with the abrogation of collective bargaining agreements approved by the bankruptcy court. Specifically, Briggs sought to enjoin the defendants from:
1. Interference or threat of interference with the normal business operations of Briggs Transportation Co.;
2. Picketing or the display of any picket signs within 2000 feet of any terminal, dock facility, or other place of business of Briggs Transportation Co., *343 its agents, customers, suppliers or vendors;
3. Interference or threat of interference with the intrastate or interstate, local or over-the-road movement of equipment and/or freight of Briggs Transportation Co., its agents or customers, including, but not limited to, vandalizing, tampering, blocking, or following said equipment and/or freight;
4. Interfering or threat of interference with the real or personal property of Briggs Transportation Co. or its agents, customers, employees, suppliers or vendors at any Briggs Transportation Co. terminal or any other dock or business facility of an agent, customer, supplier or vendor; [or]
5. Interfering or threatening to interfere with any employee, agent, customer, supplier or vendor of Briggs Transportation Co. or their families, whether on or off duty, during or after business hours, including, but not limited to, following, threatening; assaulting or harassing, by any means, including the use of the telephone.
On April 22, 1984, the company unilaterally implemented its proposed changes in terms and conditions of employment. The district court heard oral argument on its motion for a preliminary injunction against union retaliation on April 24, 1984.
On April 25, 1984, the'court issued its order denying the relief requested. It held that Briggs’ requested injunction involved a labor dispute over terms and conditions of employment. See 29 U.S.C. § 113(c) (1982). Thus, under the circumstances before it, the court found that the Norris-LaGuardia Act limited its power to issue an injunction. See id. § 101. The court rejected Briggs’ contention that the issuance of an injunction restricting a union’s attempts to resist the abrogation of a collective bargaining agreement was a necessary adjunct to the power of a bankruptcy court to authorize such an abrogation, a power upheld by the Supreme Court in Bildisco. Although Bildisco did arrive at an accommodation between the Bankruptcy Code and the National Labor Relations Act which subordinated labor contracts to the legitimate reorganization efforts of failing businesses, the district court held that Bildisco did not discuss or require a similar subordination of the Norris-LaGuardia Act to the Bankruptcy .Code. The court succinctly stated, “[W]hile Bildisco may have authorized Briggs to cut its employees’ wages * * *, it does not prohibit the employees from complaining.” Briggs Transportation Co. v. International Brother'hood of Teamsters, 40 B.R. 972, 975 (D.Minn.1984). Briggs perfected an expedited appeal of the district court’s order to this Court.
On appeal, Briggs candidly recognizes that it is asking for relief which would be unavailable to. it in the absence of its Chapter 11 filing and the bankruptcy court’s order authorizing the abrogation of its collective bargaining agreements with the unions. Thus, the principal question is whether the logic of the Supreme Court’s decision in Bildisco requires injunctive relief from legitimate strike activities and peaceful picketing by union members who do not wish to accept the abrogation of their contracts and fail to negotiate new agreements with employers attempting Chapter 11 reorganization, even where such relief would otherwise be beyond the jurisdiction of the district court under the Norris-LaGuardia Act. We agree with the district court that Bildisco does not stretch this far, nor should it.
Initially, we note that the parties have cited us to nothing in the Bankruptcy Code or its legislative history indicating a congressional intent to lift the jurisdictional restrictions of the Norris-LaGuardia Act when a debtor receives court approval of the abrogation of a collective bargaining agreement. Other circuits have expressly held that the automatic stay provisions of the bankruptcy laws did not implicitly alter jurisdictional limits with regard to labor disputes imposed by the Norris-LaGuardia Act. Crowe & Associates, Inc. v. Bricklayers & Masons Union Local No. 2, 713 F.2d 211, 214-215 (6th Cir.1983) (per cu *344 riam); Petrusch v. Teamsters Local 317, 667 F.2d 297, 299-300 (2d Cir.1981) (per curiam), cert. denied, 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1982). In the same manner, we are convinced that Congress would not have silently repealed the Act to the extent that collective bargaining agreements may be rejected in a Chapter 11 proceeding under 11 U.S.C. § 365(a) (1982).
Neither does the Bildisco case mandate the result urged upon us by Briggs. The Bildisco Court simply held that a bankruptcy court may approve the rejection of a collective bargaining agreement as part of a debtor’s Chapter 11 reorganization efforts upon an appropriate showing, and that a debtor does not commit an unfair labor practice by modifying or terminating part of such an agreement after filing bankruptcy but prior to a court order authorizing rejection of the agreement. NLRB v. Bildisco & Bildisco, supra, — U.S. at-, 104 S.Ct. at 1191, 79 L.Ed.2d at 489.- The Court did not discuss the Norris-LaGuardia Act, nor did it imply that the Act should in effect be repealed in cases such as the one here before us.
The Norris-LaGuardia Act was designed in large measure to prevent federal courts from enjoining the legitimate exercise of the rights of American workers created and protected by the National Labor Relations Act. We would unnecessarily limit those rights by easing the jurisdictional restrictions of the Norris-LaGuardia Act in the present case.
We note two important factors which support our affirmance of the district court herein: First, to the extent that the nature or conduct of the unions’ activities violates provisions of state or federal law, relief from such activities may be available to Briggs under established statutory and case law in the same measure as given to other employers. See Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, 436 U.S. 180, 194-197, 204, 98 S.Ct. 1745, 1756-1757, 1761, 56 L.Ed.2d 209 (1978), and cases cited therein; San Diego Building Trades Council v. Garmon, 359 U.S. 236, 243-244 & n. 2, 79 S.Ct. 773, 778-779 & n. 2, 3 L.Ed.2d 775 (1959), and cases cited therein; 29 U.S.C. § 107 (1982). Second, any Briggs employees who strike out of dissatisfaction with Briggs’ wages, benefits, and terms of employment may be considered economic strikers, and Briggs retains the right to respond in any legal manner to continue its operations. See NLRB v. Mackay Radio & Telegraph Co., 304 U.S. 333, 345-346, 58 S.Ct. 904, 910-911, 82 L.Ed. 1381 (1938).
For the foregoing reasons, we affirm the district court’s judgment refusing to enjoin the peaceful collective activities of Briggs’ employees and their elected representatives.

. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.'